May it please the Court. My name is Gabriel Snyder, and I represent the petitioner, Mark Anthony Miller. At this time, I respectfully request that five minutes be reserved for rebuttal. Good government, with reasonable claim processing procedures, requires that this habeas petition be declared timely. I have to start by mentioning that the briefs, while encapsulating everything we need to settle this case, don't quite do a sufficient job of keeping it succinct. And so today, in this first argument, I want to make sure that we keep our arguments succinct to the point and not spend time addressing the State's arguments until later. 28 U.S.C. 2244-D1A provides that the statute of limitations period to file a habeas petition begins upon conclusion of direct review or the expiration of the time preceding such review. Our argument can be succinctly summarized by saying petitioner was in direct review throughout the State proceedings and never left direct review. Thus, when the petitioner timely filed notice of appeal, appealed to the North Carolina Court of Appeals, then to the North Carolina Supreme Court, he remained in direct review until 90 days after the North Carolina Supreme Court denial. Direct review then ended November 21st, 2012, and we filed within the one-year statute of limitations period on November 14th. That's an interesting argument. Is that an argument that's been made in your brief? Yes. That precise argument. Yes, that precise argument. There was never, in other words, there's never a State law, a final State law decision for EDPA purposes. That's the argument that I'm going to find in your brief. I'm sorry, can you repeat the question? There's never a final State law determination for EDPA purposes, triggering EDPA. Is that your argument? There was a final determination from the Court of Appeals, meaning that they dismissed his appeal. But for direct review purposes, his direct review continued beyond that point until he had time to seek review to the North Carolina Supreme Court. So whether or not his appeal, we can address that now if the Court would like, but whether or not his appeal was procedurally defaulted on by the North Carolina Court of Appeals is a different question than when direct review ended. And not a question you've raised. We have, well, the State has raised it, and we have addressed it, and I've got arguments in the brief and here to address why that argument does not defeat us on being timely today. So I'm now going to get to that question of why Mr. Miller, the petitioner's appeal, remained in direct review from the June of 2000, when he filed notice of appeal, to the Court of Appeals dismissing his appeal later in 2012. In Jimenez v. Quarterman, the Court articulated that direct review cannot end until availability of direct appeal to State courts and to this court, meaning the Supreme Court, have been exhausted. The Federal courts look to North Carolina appellate rules and case law to further define direct review. Under North Carolina law, direct review starts upon notice of appeal. That appeal remains pending until an order is entered granting a Rule 25, under the North Carolina appellate rules procedure, motion to dismiss is granted. State v. Brown, a North Carolina case, interprets Rule 25 to say the same.  Did nothing to perfect his appeal. Then four years later, filed a motion for appropriate relief in State post-conviction proceedings. When the Court of Appeals got their hands on it, they were asked to determine whether or not the trial court had jurisdiction to hear and to enter an order on the four years later motion for appropriate relief. The Court of Appeals found in that case the trial court actually lacked jurisdiction to even enter an order because when they looked through the record, they found no motion to dismiss and no order granting a motion to dismiss. Thus, the defendant's appeal in that case was still pending, even four years later. Just as in Brown, Miller's appeal was still pending until an order granting dismissal was entered. The Superior Court actions in 2011 give effect to these correct procedural rules. The Superior Court in 2011 did as it should have back in 2000. It entered appellate entries. It found Mr. Miller indigent and gave Mr. Miller his constitutional right to counsel to pursue his appeal. All things Mr. Miller asked for by motion back in 2000, and the State Superior Court failed to take action on these motions. Superior Court actions prove that Miller's appeal was still pending in 2011. When the Court put Miller's appeal back on track, these are what we argue are good claim processing rules and the rules of North Carolina. Because Miller's appeal was still pending, direct review continued until that appeal was ordered dismissed, meaning as of February 29, 2012. The Court of Appeals on February 9, 2012 dismissed Miller's appeal granting the State's motion to dismiss, ordering, quote, appeal dismissed. Appeal dismissed means as of that date. Further illustrating that point, the State's motion, the underlying motion to dismiss under Rule 25, did not request a dismissal as of a certain date in the past, only as of that date. Thus, direct review continued from 2000 and on to November 21, 2012, and we filed within the one-year statute of limitations on November 14, 2013. So I now want to address the State's arguments. The State has argued multiple dates as to when Mr. Miller lost his appeal at some time in the past. First, they argued that direct review concluded on the 12th of June of 2001, meaning that Mr. Miller lost his appeal upon timely notice of appeal, and because he did nothing, his appeal was lost as of that date that he entered notice of appeal. And then one year from then, the previous statute of limitations concluded. Next, they argued that the appeal ended on July 17 of 2000. But these do not follow the correct North Carolina appellate rules of appellate procedure. When the court failed to enter an order on Miller's indigency, that set the clock paused in effect because Mr. Miller was entitled to an attorney, and North Carolina provides that when Mr. Miller was entitled to an attorney, it was the clerk's job to order the transcript at that point and not Mr. Miller. So he cannot be seen to default because it was the State's actions that kept him from pursuing his appeal. He cannot be viewed to have defaulted in some time in the past. Only when the State finally put his appeal back on track and dismissed his appeal would a direct review concluded until he continued further. So in responding, not beating around the bush, but in responding to the State's argument that Petitioner lost his right to an appeal in 2000, we say two things. He didn't because Petitioner remained in direct review. And two, the State's assertion in any event is irrelevant in light of the Superior Court's actions in 2011, restarting the appellate clock and recognizing Petitioner's right to direct review with appointed counsel. Just as in Jimenez v. Cordeman, where the United States Supreme Court put an appeal back on track and when the State put the appeal back on track, they said that that restarted the deadlines, the direct review, and thus he was timely to be before the United States Supreme Court for his habeas petition. Just as that happened then in Jimenez, it happened in this case, assuming he lost his appeal sometime in 2000. You know, Mr. Snyder, I don't hear you giving us any explanation of why Mr. Miller can just sit around for nine years. How is that? I mean, he certainly had the ability to ask for an appeal because he did. Are you saying that once he asks for an appeal, an appeal, excuse me, that appellate counsel be appointed, his job is over and he can just pretty much wait it out for nine years before he raises it again? Joe, that's a great question. And that's not our argument that he could do nothing. I think the State Motion for Appropriate Relief Proceedings provide otherwise, that Mr. Miller, and this is uncontradicted evidence, Mr. Miller testified that he called Kent Lively, the attorney who withdrew the same day he entered his integency and asked for an attorney. No, Mr. Lively made the same request. Right. I'm saying after those two requests were out, he needs appellate counsel, I want appellate counsel, Mr. Lively, Mr. Miller. Then nine years passes, right? Yes, Judge. But at the MAR proceeding, he told the court that he had talked to Mr. Lively and Lively kept reassuring him that he was going to get his appeal. As far as what Mr. Miller should have done other than that, it seems to me that when an attorney that you've used in the past, you used him for a past trial, he used him for this one, tells you you're going to get your appeal. He was told in the context of the process of appealing, you're going to get your appeal eventually. That's what you're saying his lawyer told him? Yes. And this is all, again, this is all coming from the context of someone who doesn't know the law. Oh, yeah, that's right. You don't have to be apologetic for it. That's your whole theory. That is when you say, listen, I know it's been a long time, but you're going to get your appeal. I mean, as a lawyer, we say, what do you mean get it? But your point is he's saying, are you going to get your appeal? Your day is going to come. It's a long day. I mean, that's your argument, correct? Sure. Right. Yes, Judge. Further, I think we also, and this kind of brings me to our next point, we argue that the state. So if that's so, should we send it back for finding a fact by some court about whether, in fact, that happened? Whether, in fact, Mr. Kent Lively. Well, part of the problem is. He's dead. He's dead. Okay. Yeah. So did your client assert that he did this once a month, once a year, and years go by? Sure. Yes, Judge. That was, I'm coming, I was kind of coming to that point. That was, my first answer was kind of a bonus in saying that he did ask. But my real answer, and the one that I think the Constitution requires. Your additional answer, you mean. Sure. Sure. Yes, Judge. You have to be careful how you use words, your real answer. Go ahead. I'm sorry. Yes, Judge. No. I appreciate that. All right. So the main point is the Constitution requires that counsel be appointed to him. When, under Coleman v. Thompson, is a case that we cite throughout our briefs. When the state is supposed to provide the defendant counsel, he's supposed to provide, the state's supposed to provide him counsel. At that point, they should have entered the order granting him counsel, and it shouldn't have been the job of the defendant to make the state give him counsel. That, any, any default. That's an obligation under state law, is that what you're saying? No, I would say, well, there is an obligation under state law. There's certain rules to provide that whenever a person asks to be declared indigent, that the court's supposed to answer that and enter the appellate entries and certain things like that. But I'm saying that it's a constitutional requirement that Mr. Miller was entitled to counsel. I mean, Gideon v. Wainwright, Evitz v. Lucey, and he should have been given counsel back in 2000 to pursue his appeal. I think what's easy for us to know the law, to talk about, is, as Judge Gregory was saying, you're going to get your appeal made sense to him. We would know better. He thought that he had done everything. He even filed his pro se notice of appeal and did everything that he needed to do to get his appeal, and the state just didn't follow through and give it to him. And it was ultimately their fault. The other argument that I want to address from the state and the district judge and the magistrate, they talk about how Mr. Miller lost his appeal. They use words interchangeably, matter of law, operation of law, back in 2000. We argue that the North Carolina Court of Appellate Rules aren't so stringent, that the state Supreme Court in Dogwood urges the North Carolina Court of Appeals to resort to other discipline besides dismissal before dismissing an appeal, such as sanctions, especially for violations of non-jurisdictional rules, such as the rules that Mr. Miller has allegedly violated here, filing the preparation of the transcript, selling the record on appeal, and filing the record. The court states in that case in Dogwood, we have therefore emphasized that non-compliance with the rules does not ipso facto mandate dismissal of an appeal. Thus, any assertion by the state that Miller lost his appeal sometime back in 2000 as a matter of law or option of law or as to a certainty is just not correct under North Carolina law. This last argument kind of loops into what we were talking about earlier with the state's brief of latches and otherwise blaming the petitioner for losing his appeal. Assuming that petitioner did default in state proceedings, Miller did not have counsel to pursue appeal. When the court failed in 2000, Coleman v. Thompson says that the fault is attributed to the state for any procedural default. They say, quote, where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the state, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails. Thus, any prejudice to the state in the brief, they argue that they won't be able to talk to Mr. Lively anymore and that the transcript is gone, which we argue. Excuse me, though. Mr. Snyder, with regard to Mr. Miller's testimony, I've understood your argument to suggest that he kept contacting Mr. Lively and Mr. Lively said, don't worry, don't worry, you're going to get an appeal. I don't find that in the transcript. On page 604, 605, and 606, he says he did write to Mr. Lively at the time he filed his own notice of appeal pro se. He said, I was going to get an appeal. That's all he kept saying. Did Mr. Lively ever do anything else? No. Did you write to him? Did Mr. Lively respond to you? He said he wrote to him. And he said, no, he didn't. So there wasn't this continual assurance over a period of time that you're referring to, is there? I'm just worried about whether you're accurately citing the record here. I'm out of time. May I answer your question? I don't have the record in front of me, but when I went over the record and understood the motion for appropriate relief proceedings and conversations with Mr. Miller, as far as what timeline are we talking about, did every day for 10 years, did he call Mr. Lively? Not at all for 10 years is what I'm saying Mr. Miller said. He said, I wrote to Mr. Lively, never heard back from him. There's no indication here in his testimony that I can find him. Perhaps you can help me, but there's no indication I can find here an ongoing conversation with Mr. Lively. Don't worry, you're going to get an appeal. It's just not here unless you can point me to a different part of the transcript. Unfortunately, I don't have that in front of me. I apologize. Okay, well we'll check it out. Maybe on rebuttal you can tell us about that. Okay. Okay. Yes, Judge. Any other questions? No, not at this point. Thank you. Mr. DelForge. May it please the court. I'm Clarence DelForge with the North Carolina Attorney General's Office. Miller's federal habeas petition is untimely for two reasons. First is latches. His case was, his conviction was on June 1 of 2000. He filed his federal habeas petition on November 14 of 2013. That's a 13-year delay, and it's unreasonable. The prejudice to the respondents is the loss of the court reporter's stenographic notes. We can't produce the trial transcript, and unfortunately the trial attorneys now did. So the respondent, the State, has been severely prejudiced by the defendant. Well, so has he. I mean, I think that argument is pitiful. Those are the transcripts or anything within your control, not his. But it's his delay. It's his delay in filing the federal habeas petition. And see, what he does in his brief is he conflates a potential ground for relief as reasons for tolling, and they are not a claim of ineffective assistance of counsel for failing to perfect the appeal, a claim of denial of an effective appellate review. Those are potential claims that the petitioner could and should have raised in a timely filed federal habeas petition. There can be no equitable tolling in this case at all, period, because there's no due diligence. There's 180 degrees opposite of due diligence in this case. He sat on his rights for 10 years, and there's no extraordinary circumstance external to the defense that has prevented him from making his timely filing. You're saying the State gets lucky. I mean, the State dropped the ball. The State made a big mistake. But that was the – And you're saying it just gets lucky because he sat on his rights. That was – yes. Yes, Your Honor. He sat on his rights for 10 years. That is unreasonable. Under State law, under Woods v. Shelton and McGinnis v. McGinnis, those are published North Carolina Court of Appeals decisions, that the appeal – that if you fail to perfect your appeal, it works a loss of the appeal, and the case is no longer properly before the Court of Appeals. There's no decision that the petitioner has cited in his brief or in his supplemental authorities that overrule those decisions or even purport to overrule those decisions. That State v. Brown case, he points out, is on a post-conviction motion for appropriate relief. It had – and it did not have a 10-year delay or 12-year delay between the notice of the appeal and then taking any further appellate action. Counsel, let me ask this. Now, those things that you are saying that ended his appeal like failure to perfect, is there any entry on the court records that they dismissed when that – when those 45 days exhausted? That's not the way the North Carolina appellate procedure works, Judge. Does it work this way that you just do nothing when a person makes a motion for counsel?  Well, if the court did not take timely action, there were remedies. That's the record now. There were remedies. He could and should have filed a mandamus petition with the Court of Appeals. What would he do if the Federal District Court did nothing down in Raleigh for several years? What would be his obligation? To file a writ of mandamus to this court?  What's the obligation of the court? Okay. Let's take everything you said was right about his obligation. Now, what is the obligation of the court? The ones who have law degrees and judges and clerk's office, what's their – the records, what's their obligation? Since you can articulate his very well. Nobody can look away from the fact that this appeal didn't get processed. I mean, that's obvious. Whose obligation was that? Well, it was the petitioner's obligation. He had retained counsel. You're going back to him. I'm asking you whose obligation was the – I thought you were finally getting to the other side doing something, having an obligation. Do you have any on that side, obligation? Well, the State could have calendared the motion for appointment of counsel in the trial court and appointed him counsel. The defendant had an equal obligation to make some kind of motion himself to get the motion before the court for an adjudication. It's not a – it's all the State's fault situation here. You know, it's the defendant's obligation too. He had retained counsel in trial, and he told his lawyer in the record it shows he didn't want his trial counsel to handle his appeal. He has an obligation to go out and get an attorney or to file an affidavit of indigency to get his appellate counsel. He just can't drop the ball and sit on it for 10 years and then say, oh, yeah, yeah, yeah, by the way, give me my appeal back again. Well, what about – didn't he file for a motion to appoint counsel for him? His pro se attorney did back in June of 2000. That's for him. Isn't that a motion that's a live motion before the court that it never, never disposed of? The petitioner has some obligation. No, no, you're not answering my question. Oh. Isn't that a live motion that's before the court that it never acted upon? The motion to appoint counsel. What's your question? What's the obligation of the court? Yeah. Isn't there an obligation of the court? Sure, to hear the case. Everybody, I mean, everybody wanted this appeal to go through. Oh, really? Yeah. It doesn't seem to be anything on the State side that would indicate that for nine years it did nothing. Well, the defendant, it's his obligation, Judge. It's his obligation. It's not his obligation to take care of the docket of a court. The court is a court of record and motions are filed to it. It has to do its own docket. The Fourth Circuit, we can't say, oh, well, we got motions here. I guess we'll just let them sit there until somebody just waits nine years and do nothing. No, we take care of our own motions. That's why we have clerk offices. And what I would say, Your Honor, with all due respect, is that what you've just said is a ground for relief that he could and should have filed in a timely filed federal habeas corpus petition. You cannot conflate the underlying ground for relief as a reason for tolling. It's no reason to everything you say is true. Assuming everything you say is true, that's something he could and should have raised in a timely filed federal habeas petition. It's not an excuse for just throwing the statute of limitations out the window. Okay, but a timely filed habeas petition is triggered by a final state action, correct? That's correct. Okay. Are you aware of any federal case finding direct review concluded in the state court for AEDPA purposes by operation of law as opposed to an actual decision? No. Because that's what the district court relied on here. I believe the district court relied on the state law cases. It's up to the North Carolina Court of Appeals to determine. Okay. First, answer my question. Are you aware of any such case? No. No. Okay. Flash v. Perghese, the Maryland case, points out the distinction and why Judge Schroeder got this case exactly right. The Maryland case, the petitioner pled guilty. He had no right to appeal under a Maryland appellate procedure. He didn't file it. He sat on his rights for 10 years. Then he filed a motion with the Maryland appellate court asking for a belated appeal. The Maryland appellate court said, okay, we'll let you submit an application for leave to appeal in 30 days, which he did. And then the Maryland Court of Appeals dismissed the appeal. Now, in that case, the court reopened and restarted the appeal. That didn't happen here. Now, the judge, the trial judge, erroneously appointed appellate counsel and made appellate entries, but that could not overrule McGinnis v. McGinnis and Woods v. Shelton, which hold that the appeal was lost by operation of law for failing to perfect the appeal. Those are the cases. And in those cases, there was a notice for an appeal filed in those cases? Yes, yes. And so you're saying as a matter of state law in North Carolina on these exact facts? Well, those were civil cases. I don't see how you could say, you know, on exact. As far as the relevant facts were, they were exact. It was a civil case. It was a civil case. Big difference, isn't it? The North Carolina rules of appellate procedure apply equally to both civil and criminal cases unless the rules themselves state otherwise. And that you can... That's why we're in a federal court to some degree to look at whether or not you have a fair and appropriate means of handling cases and doing justice there in these 2254-type cases, whether or not... See, I mean, you have a system there, and after nine years, if you do nothing, then automatically it goes away, right? Is that a fair and adequate opportunity to be heard? During a federal court, we look at whether or not North Carolina has provided such? Because you just told me they do have an obligation to take care of this motion, but you say, well, after a while... And how long would he have to wait? If he waited a year, it would be gone, wouldn't it? If he had filed... It happened to be nine here, but a year would have been gone, right? If he had filed his motion or filed a cert petition in the Court of Appeals in any kind of reasonable period of time, he would have gotten his appeal, the transcript would have been transcribed, and we wouldn't be here. But he didn't. Ten years is just too long. His ten-year delay forfeited his right to complain about the loss of his appeal. I don't know. It's a lot of things. Well, he certainly wasn't gaming the system, was he? Yes, he was gaming the system. He had 1998 cases. Wasn't he in prison? He had 1998 cases, which he got appeals from. He filed not one but two state post-conviction motions for appropriate relief during this same period of time. He knew how to litigate post-conviction matters. That's a different question. But he chose not to do so in this case. To what advantage? I don't know, but he delayed. I don't either. There is none. It makes more sense that he thought that, in fact, he would get his appeal. And sit on it. It's objectively unreasonable to sit on your appeal for a decade under any circumstances, particularly a man who knows how to litigate pro se post-conviction motions. But on the other hand, it's illegal for the state to do what it did. So, right? His appeal should have been processed. I mean, I can't. That's why it was illegal. The facts are the facts. That's why we're here. You know, you've got the state's arguable error here, and then you've got the defendant's 10-year delay here. And this 10-year delay has severely prejudiced the state in the federal habeas case. See, what he tries to bring up is he conflates the grounds for relief. It's basic habeas law that you can have a valid claim for relief, and if you wait too long, you lose it. And that's what happened here. You know, he had arguable claims of ineffective assistance of appellate counsel for failing to perfect his appeal. He had arguable claims of denial of effective appellate review. But he waited too long. He's lost those claims. And we've had more serious claims. You know, the Rouse v. Leak case is a death penalty case. Right. One day late. One day. That was my case. I argued that case. I remember it well. I remember it well, too, Judge Mott's decision. And when it was en banc, I don't think I'll ever forget that case. Yeah, I won't either. One day late, the man was executed. No, he's still smiling and sitting on death row as happy as can be. Oh, he's still there? Yes, he's still. He's happy as can be. He's still. He's not. It didn't hurt him one bit. It didn't hurt Rouse one little bit. Wow. And he lost his right to. He had argued appeal. Remember those underlying grounds for relief he had that. You know, I think you're. Yeah, I don't think you're serving your case by re-arguing that case. My point being that he had arguably valid claims for relief that were waived, that were out of time and barred by the one-year period of limitations, just like this petitioner has arguable claims that he could have raised in a timely filed federal habeas petition. And he did not. And he knew how to file pro se motions because the record shows he filed not one but two in the 1998 cases. One during this same period of time, May 31 of 2001. He filed a pro se MAR in the 1998 case. He could have easily filed a federal habeas corpus petition on May 31 of 2001 and would have been timely. And his transcript would have been ordered and the case would have been heard and he would have gotten his appeal. And to say that this man's appeal has been pending for ten years is to stretch a legal fiction to the point of absurdity. This man forgot, for whatever reason, chose not to pursue his appeal. He let his appeal drop for a decade and then decided, oh, well, now I'm going to restart it, try to reopen it. And that is not permitted on federal habeas review. Judge Schroeder's opinion is exactly right and should be affirmed. Unless there are any other questions, the judgment of the district court should be affirmed. Thank you. All right. Mr. Snyder, you have some time. Have you found a response to Judge Keenan's question? Yes, I did. To the extent that I overplayed my hand to saying that he did it for the entire ten years, I apologize if I did that. What I should have said was he made attempts to contact his lawyer and at some point the lawyer said that it was fine, that he was going to get it as appeal. That was right at the same time that he noted his own appeal, right? Tell us what pages of the transcript you're relying on. Yes. I don't have the pages of the transcript. I sincerely apologize. I think you're talking about there's one point where I think Judge Keenan read and said he kept telling me. Yes. But there's no idea from the record what kind of space there was. The question is of contemporaneous to his filing his own, but he did say all he did was kept telling me. That's what it says. But you don't know whether that meant separate times or whether he said that several times in one conversation. But it does say all he did was he kept telling me you're going to get your appeal. I think I'm almost quoting what Judge Keenan said. Do you know where the kept telling me language is? Maybe I can get it. Judge Keenan, I think, pointed out the point. He's saying he contacted several people, but he isn't saying that he continually contacted Mr. Lively the way I read it. Oh, no, he doesn't say that. It's pages 604 to 606. Now, that's why I was wondering whether there was another part of the transcript you were relying on. But if that's it, we'll just take it for what it is and not hold you up anymore. All right, Judge. I guess I wanted to point out one of the things that the State said that I disagreed with was Mr. Miller did file a motion for indigency back in 2000. The motion read that Kent Lively said he can no longer afford to pay me. He needs to be appointed appellate defender. He's indigent. Yeah, the lawyer was telling the court there, look this person needs a lawyer because he can't afford to pay me. He needs one. Yes, Judge. I just wanted to clarify that from the last. I also am giving due respect to my colleague. I think the attitude portrayed today has kind of been the State's attitude towards Mr. Miller's rights all along. When I just graduated from law school last year and when I first started working with my. Congratulations. Thank you. Thank you, Judge. When I first started working with my dad on this case, I was in my first year of law school, and so I'm doing all this research not knowing what I'm doing, and I come to find out, you know, obviously all these rules of law and I could not believe that Mr. Miller has been sitting in jail all this time without ever having been giving his appeal, and I think it's due time that Mr. Miller gets the constitutional rights that he was entitled to back in 2000 and that this habeas petition be declared timely. Thank you. Thank you so much. Thank you, counsel. I'm going to ask the clerk to adjourn the court until 2.30 today, and then we'll come down and greet counsel. Honorable court stands adjourned until 2.30, God save the United States and this honorable court.
judges: Roger L. Gregory, Diana Gribbon Motz, Barbara Milano Keenan